# THE MAYOR AND CITY COUNCIL OF BALTIMORE
## AND THE SEWERAGE COMMISSION
## OF BALTIMORE CITY.

*vs.*

# THE FOREST PARK COMPANY OF BALTIMORE
## CITY, A BODY CORPORATE.

*Sewers: contracts concerning—; construction of—.*

On a bill for an injunction to prevent injury to land, etc., the complainant's right depends upon proof of the injury alleged; and if the plaintiff offers evidence to support his averment, the defendant should be allowed opportunity to present proof to the contrary.                              p. 300

Two land companies, The Park Land Corporation and the West Forest Park Company, had jointly installed a storm water sewer system draining into an open run; another land company, The Forest Park Company, installed a drainage system through its property, depending for its outlet upon the sewerage system of the other two companies; a written agreement for such user was duly executed, acknowledged and recorded by the three companies; among other things it provided that the right given the Forest Park Company should be for the sole purposes of carrying off the storm and waste water that would originate upon its own property and the property of George R. Webb (which was particularly described); it was also provided that except as aforesaid no other property should be permitted to drain through, over or under the property of the Forest Park Company, or of George R. Webb as aforesaid, into its storm and waste water drains, nor permission be granted any other person or body corporate what-

soever, except as aforesaid, to connect with, use or drain into said storm and waste water drains without the written consent of the Park Land Corporation and the West Forest Park Company and a resolution of the Board of Directors of the Forest Park Company authorizing the same; the contract further provided, however, that any purchasers of lots from the Forest Park Company and George R. Webb as aforesaid should have the right to connect their lots with the said drains in the manner and for the purpose specified; *held,* that this restriction only defined and limited the extent to which the Forest Park Land Company and the lands of George R. Webb could use the sewerage system and did not prohibit the right of the West Forest Park Company and the Park Land Company from granting permission to other parties to make reasonable use of their system.                                          p. 299

*Decided April 9th, 1914.*

Appeal from the Circuit Court of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Robert F. Leach, Jr.,* Asst. City Solicitor (with whom were *S. S. Field,* City Solicitor, and *Robert P. Graham* on the brief), for the appellants.

*William Pepper Constable* and *Thomas G. Hayes,* for the appellees.

URNER, J., delivered the opinion of the Court.

The Forest Park Company is the proprietor of a residence development in the suburbs of Baltimore City. The property included in the project consists of a tract of land containing about forty-two acres, bounded by Liberty Heights avenue on the south and by Garrison avenue on the east. An important feature of the development was the establishment of a sewerage system. As the natural slope of the ground was towards the south, it was necessary to conduct the drainage in that direction. On the southern side of Liberty avenue were other suburban developments under the ownership of the Park Land Corporation and the West Forest Park Company. The two last-mentioned corporations had jointly installed a system of concrete and terra cotta drains extending southwardly through their properties from Liberty Heights avenue to an outlet in an open watercourse. The Forest Park Company, in constructing the sewerage system for its property north of the avenue, depended upon the use of the drains and outlet of the two companies operating to the south. An agreement for such user was effected upon terms which are set forth in an instrument dated June 1, 1909, executed by the three companies and duly acknowledged and recorded.

It was recited in the written agreement that the Forest Park Company had constructed a concrete storm and waste water drain along and across the Liberty turnpike road (now known as Liberty Heights avenue) to connect with the drainage system south of the highway belonging to the other corporations, and that permission for the making and maintenance of the connection was given upon the understanding that its use by the Forest Park Company should be subject to the terms of the agreement and "for the sole purpose of providing a drain for the disposal, carriage and emptying of the storm and waste water as now used that would originate upon the property of the party of the third part (the Forest Park Company) and of George R. Webb," the area of which was particularly defined. There was a recital also that "it

was understood and agreed between the parties hereto that
no other property except as aforesaid, should be permitted
to drain through, over or under the property of the said
Forest Park Company or of George R. Webb as aforesaid,
into its said storm and waste water drains, nor permission
granted any other person or body corporate whatsoever except
as aforesaid, to connect with, use or drain into said storm
and waste water drains without the written consent of the
board of directors of the Park Land Corporation of Balti-
more City and the written consent of the board of directors
of the West Forest Park Company through whose lands the
aforesaid storm and waste water drains are extended and
a resolution passed by the board of directors of the Forest
Park Company of Baltimore City, authorizing the same."
After a further statement in the preamble to the effect that
it was to the interest of the parties that their rights with
respect to the drains should be accurately defined, the agree-
ment proceeded formally to provide, in consideration of the
premises, and of the sum of one dollar paid by each of the
parties to the other, that the Forest Park Company, its suc-
cessors and assigns, should have and enjoy at all times there-
after the right to maintain and use the connection existing
between its concrete storm and waste water drain with the
system of drainage to the south, for the sole and exclusive
purpose of carrying and disposing of the storm and waste
water originating upon its property and that of George R.
Webb as previously described. It was further agreed that
the Forest Park Company, its successors and assigns, should
"not permit nor allow any other person or body corporate,
except as aforesaid, to connect with, use or drain any other
property through, over or under its property, or in any other
manner, into its said storm and waste water drains as now
or hereafter constructed, without the consent in writing of
the board of directors of the Park Land Corporation of Balti-
more City and the West Forest Park Company, through
whose lands the aforesaid storm and waste water drains are

extended, and a resolution of the board of directors of the Forest Park Company of Baltimore City, authorizing. the same." There was a stipulation that if the Forest Park Company, its successors or assigns, should violate any of. the terms or conditions of the agreement, "or allow any person or body corporate, except as aforesaid, to drain their property' through, over or under its property, or in any other manner, into any of its storm or waste water drains," the other contracting companies should have the right upon thirty days' notice,, to discontinue the connection between the two systems. The final provision in the agreement was to the effect that the Forest Park Company and George R. Webb, and those who succeeded them in title, should have the right and privilege to authorize any purchasers of lots included in their respective properties to connect with and use the drains in the manner and for the purposes specified.

The City of Baltimore, through its Sewerage Commission, has constructed a storm water drain under the bed of Liberty Heights avenue, and has instituted condemnation proceedings under Ch. 117 of the Acts of 1912, Art. 33-A of the Code, title "Eminent Domain," against all the corporations interested in the sewerage systems described with a view to acquiring the right to connect the city drain with that of the Forest Park Company just above its junction with the sewer belonging to the developments south of the highway. That proceeding has not yet been brought to a conclusion. Since it has been pending the city and its Sewerage Commission have entered into an agreement with the companies owning the lower drainage system by which the city was authorized to connect its drain directly with the system below the point where it was joined by the drain. of the Forest Park Company, all the questions involved in the condemnation suit being reserved without prejudice for future judicial determination. The Forest Park Company seeks to have the city restrained from acting upon the permission thus secured, and it has filed the present bill for

that purpose. The bill objects to the proposed connection on the ground that the drains of the companies operating to the south are not of sufficient capacity to carry the flow from the city drain in addition to that contributed by the Forest Park and other properties originally intended to be served, and that if the conduits should be allowed to be thus overcharged, the efficiency and utility of the plaintiff's sewerage system would be destroyed. It is stated in the bill that the right of the city to connect with the drain of the plaintiff or of the other companies, and the compensation to be paid for such a privilege, are questions which can properly be decided in the pending condemnation suit. The answer of the city and the Sewerage Commission avers that the drain which has been constructed by the commission under the bed of Liberty Heights avenue, and for which an outlet is desired through the existing sewers of the development companies, was intended for the relief of objectionable drainage conditions in that vicinity, and that the capacity of the drain furnishing an outlet to the south is more than sufficient to accommodate the flow from the city sewer and the present tributary systems as well, and that no damage or injury would result to the plaintiff from the connection which the bill seeks to prevent. The right of the city to connect its drain with the sewer of the Park Land Corporation and the West Forest Park Company while the condemnation proceedings are pending is predicated in the answer on the agreement to which we have already referred.

In the trial of the case below the plaintiff proved its right to use the sewer of the two neighboring companies as an outlet for its own drain and offered evidence tending to show that the probable flow from the city sewer, when added to the volume of drainage already receivable by the lower system, would overtax its capacity. The city then sought to sustain the defense stated in its answer by producing evidence that the discharge from its drain would not overcharge the system upon which the plaintiff is dependent, and by

proving the agreement under which the city was authorized by the corporations owning the outlet drain to make the connection now in controversy. These offers were refused by the Court below upon the theory that, under the terms of the agreement by which the plaintiff acquired the right to use the sewerage system to the south of its property, the city, as a stranger to that agreement, could not be permitted to make any connection with the system except by the plaintiff's consent, which had not in fact been procured. In accordance with this view it was held that the city had no available defense to the pending suit. Exceptions were reserved to the refusal of the proffered evidence, and the appeal is from a decree making permanent the preliminary injunction.

The decision of the question before us depends upon the construction of the provisions and recitals we have reproduced from the agreement by which the plaintiff secured its right to the use of the sewerage system belonging to the other parties to that instrument. If it was the intent of the agreement that the owners of the developments south of the highway should not permit the use of their sewers by any other persons or corporations without the consent of the plaintiff, it is clear that the city could not support its claim to such use under a license to which the plaintiff was not a party. But if, on the contrary, the agreement does not properly admit of this interpretation, then the remaining objection urged by the plaintiff as to the probable effect of the discharge from the city's drain upon the value and usefulness of the upper sewers would present a material issue upon which the defendants as well as the plaintiff should have been allowed to offer evidence.

It was plainly the fundamental purpose of the agreement to provide an outlet for the sewerage system constructed by the plaintiff for the benefit of its property and the associated development of George R. Webb adjoining it on the north. Without such a provision the plaintiff's system was unfinished and useless, but the connection which the agreement

permitted made it available and efficient. The drains of the other companies, however, were in nowise dependent upon those of the plaintiff and did not require the connection to make them serviceable. It is apparent from the agreement that in dealing with the conditions just mentioned the object which the parties had in view was simply to secure to the plaintiff the drainage outlet it needed and to prescribe the limitations of the right thus conferred. There is no attempt to define the extent to which the system may be used for the property now owned or hereafter acquired by the Park Land Corporation or by the West Forest Park Company, but its use by the *Forest Park Company* was restricted to the drainage from its own and the adjacent Webb property which the contract particularly described. There is an explicit provision to the effect that the Forest Park Company shall not permit any other person or corporation to connect with its sewers for the benefit of other property without the consent of the companies owning the system to the south, but we find no corresponding prohibition against the granting of permission by the latter companies for the use of *their* system by other persons or corporations for other property without the consent of the Forest Park Company. The stipulation on this subject is contained in the second paragraph of the agreement and by its express and unequivocal terms the Forest Park Company is the only contracting party to whom the restriction is made to apply. That company is forbidden to allow "any other person or body corporate, except as aforesaid, to connect with, use or drain any other property, through, over or under its property, or in any other manner into its said storm and waste water drains as now or hereafter constructed." without the consent of the other contracting parties and a resolution of its own board of directors. The phrase "except as aforesaid," manifestly refers to the provision in the next preceding paragraph by which the Forest Park Company was authorized to use the sewers for the drainage of the Webb property in addition

to its own.. The effect of the provision was clearly and simply to prohibit the Forest Park Company from allowing any drainage, except from the two areas particularly defined, to enter its sewers as tributaries to the system of the other companies without their express permission and without formal action of its own board of directors on the subject.

In support of its theory that the city could not be authorized to use the lower drain without the consent of the company owning the upper system, the appellee relies mainly upon the recital we have quoted from the preamble of the agreement as to the understanding that "no other property except as aforesaid, should be permitted to drain through, over or under the property of the said Forest Park Company or of George R. Webb as aforesaid, into its said storm and waste water drains, nor permission granted any other person or body corporate whatsoever except as aforesaid, to connect with, use or drain into said storm and waste water drains without the written consent" of the Park Land Corporation and the West Forest Park Company and a resolution of the Forest Park Company authorizing such user. It is urged that the effect of this language is to require the consent of *all* the contracting companies before any third parties should be allowed to make connections with. *either* of the systems mentioned in the agreement. According to our reading of the recital quoted it contemplates, like the formal stipulation we have already considered, that the restriction to which it refers should apply exclusively to the Forest Park Company and its property in the use of the connecting drain, except in so far as the benefit of the agreement is extended by its terms to the adjacent development which it specifically designates. The drainage prohibited from other sources was such as the Forest Park Company might possibly have allowed to pass "through, over or under" *its own property* "into its said storm and waste water drains." In effect the recital stated that drainage from property other than that described was understood and agreed not to be allowed

to enter the Forest Park Company's sewers and that permission should not be granted by that company to any person or corporation, with the exception mentioned, "to connect with, use or drain into said storm and waste water drains," without the consent of the other parties. The only drains to which the term "said" can be held to refer as thus used are those of the Forest Park Company which had just been distinctly specified. The evident purpose of the recital was to emphasize the prohibition it was undertaking to express by applying it both to *property* and to *persons or corporations* for whose benefit the drains might be desired in excess of the service contemplated by the agreement. It was stated that no *other property should be permitted to drain* into the sewer of the Forest Park Company and that no permission should be granted *any other person or corporation,* with the exception mentioned, *to connect with its drains,* without the approval of the two companies through whose sewers the additional drainage would have to be discharged. There is nothing in the preamble or in the main body of the agreement which, in our opinion, forbids the Park Land Corporation and the West Forest Park Company to allow others to use their sewers without the consent of the Forest Park Company, or to entitle that company to object to any use of the former companies' drains, which would not impair the efficiency of its own system.

In the disposition of the case below the question as to the effect which would probably be produced upon the appellee's use of the outlet by the admission of the drainage from the city's sewer was treated as immaterial, but this was only upon the theory that the appellee's consent was a prerequisite to the proposed connection. It is apparent that in the view we have adopted as to the proper construction of the agreement before us the issue just stated is material and vital to the case presented by the pleadings. The city is sought to be enjoined from connecting its drain with that of the Park Land Corporation and the West Forest Park Company

on the ground, as stated in the bill of complaint, and as already indicated, that the plaintiff's sewerage system would be thereby irreparably injured. In order to show that it was not acting as a mere trespasser the city offered to prove that the owners of the drain it was about to use had given it that right by formal agreement, and, for the purpose of meeting the allegation made and the evidence adduced by the plaintiff as to the anticipated injury to its interest from the additional volume of drainage thus required to be accommodated, the city proffered the testimony of a number of expert witnesses to show that the sewer leading to the outlet was of such ample capacity as to preclude any reasonable apprehension of injury to any of the interests involved from the action proposed to be restrained. The plaintiff's right to the remedy by injunction prayed in its bill depended upon its ability to prove the injury it had alleged, and as it had offered evidence in support of that averment the defendants should have been allowed an equal opportunity to present proof to the contrary. It results from the view we have stated that the decree making the injunction permanent must be reversed and the cause remanded for further proceedings.

*Decree reversed, with costs and cause remanded.*