# PARK LAND CORPORATION OF BALTIMORE CITY, ET AL.,

## *vs.*

# MAYOR AND CITY COUNCIL OF BALTIMORE.

*Condemnation proceedings: jurisdiction; questions of fact; limited and special jurisdiction; tract of land in several counties. Appeals: effect of decision; how far binding in subsequent appeals. Sewers: condemnation of rights to use—. Expert witnesses: qualifications of—.*

Jurisdiction of the subject-matter of a suit can not be conferred by consent.                                    p. 617

The jurisdiction given by Article 33A of the Code to the Circuit Courts or to the law courts of Baltimore City, in condemnation cases is a special and limited jurisdiction, entirely distinct from, and independent of, their common law power.
                                                        p. 617

In general, a petition for condemnation should be filed in the county or city of Baltimore, where the land sought to be condemned is situated.                                    p. 617

Where a single tract of land, sought to be condemned, is located in two counties, the condemnation proceedings may be in either county.                                    p. 618

Where the jurisdiction of a circuit court or a law court of Baltimore City in condemnation proceedings for a sewer connection depends upon a question of fact as to where the connection was to be made, if on appeal to the Court of Appeals the cause is remanded for a new trial, it is conclusively presumed to have determined that the court had jurisdiction.
                                                    pp. 619-620

When an appeal is taken, all the questions which may properly be raised in the Court of Appeals in the then state of the record, as it may exist in the court of original jurisdiction, must be considered as embraced in the first appeal, and if not then

raised and presented for decision, they must be considered as waived.                                    p. 620

Agreements between parties waiving irregularities and other matters not necessarily jurisdictional are to be commended.

p. 623

An expert witness testifying merely as an expert is not to be permitted to testify either as to the fact or the amount of damages resulting from an injurious act.            pp. 624-625

In condemnation proceedings to condemn a sewer connection, if a court of Baltimore City determined that it had jurisdiction because the connection was believed to be in Baltimore City, then whether it was right or wrong in its conclusion, can make no difference, on a second appeal, in a case where, on a former appeal, the cause was remanded for a new trial, without the question of the jurisdiction of the trial court having been passed upon or raised in the former appeal.         pp. 619-620

If the appellants, in a second appeal, had believed that the Court of Appeals, on the former appeal, had overlooked the question of jurisdiction, the matter should have been seasonably brought to the Court's attention by a motion for a reargument.

p. 620

In jurisdictional questions it is not whether the judgment of the Court decided the question rightly, but whether it had the right to decide the question at issue.            p. 619

A party can not be allowed to prosecute different and successive appeals on the same state of the record, unless there has been new proceedings since the last appeal, and then only in respect to questions raised on and decided by such new proceedings.                                    p. 620

When an appeal is taken, all the questions which may properly be raised on the first appeal, on the then state of the record, as it may exist in the court of original jurisdiction, must be considered as embraced in the first appeal, and if not raised there and presented for decision, they must be considered as waived.                                    p. 620

Any witness to be regarded as an expert should be shown to possess more than a general knowledge of the matters involved.

p. 624

*Decided May 17th, 1916.*

Appeal from the Baltimore City Court.   (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edward H. Burke* and *Robert P. Graham*, for the appellants.

*Robert F. Leach, Jr., Assistant City Solicitor* (with whom was *S. S. Field, City Solicitor*, on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is the second appeal in this case, the former decision being reported as *Mayor, etc., of Balto.* v. *Park Corporation*, in 126 Md. 358. The judgment was then reversed and the case remanded for a new trial. This proceeding was commenced by a petition filed in the Baltimore City Court by the Mayor and City Council of Baltimore against the Park Land Corporation of Baltimore City, the West Forest Park Company and the Development Aid Corporation, to secure by condemnation the right to connect the portion of the City's sewerage system constructed in the bed of Liberty Heights avenue "with the sewer or drain of the defendants at or near the point shown on the plat herewith exhibited and described in paragraph 2 hereof, with the right to discharge drainage into and through said sewer or sewers which the defendants own, or in which they have any interest," etc. The sewer with which connection was desired to be made is described in paragraph 2 of the petition as follows:

"Said sewer being of masonry construction and beginning at a point located twelve and five-tenths (12.5) feet, more or less, northerly from the southerly building line of Liberty Heights avenue, and

three hundred and twenty-six (326) feet, more or less, westerly from the westerly curb line of Granada avenue, and running thence in a southwesterly direction along Granada Path. Connection for the Baltimore Sewerage Commission's drain lying in the bed of Liberty Heights avenue is desired with the sewer of the West Forest Park Company and Park Land Company above described, at a point four and five-tenths (4.5) feet northerly along said drain from the south building line of Liberty Heights avenue."

At the last trial the jury returned an inquisition whereby it determined "the value of the property, sewer connection and use described in the petition" to be the sum of $5,847. From a judgment entered by the lower court this appeal is taken on behalf of all the defendants. The rulings of that court were on a motion in arrest of judgment, a motion to strike out and set aside the inquisition, and a motion to dismiss the petition for condemnation, and there were ten bills of exception taken during the trial—the first nine being as to the admissibility of evidence, and the tenth to granting the 12th prayer. All of the motions were overruled. They were based on the allegation that the property condemned was in Baltimore County and not in Baltimore City, and that consequently the lower court had no jurisdiction. It is also claimed that an inquisition was improper under the statute. We will first consider the question of jurisdiction.

The petition and answers of the three companies are in the record of the first appeal. It is sufficient to say that the answers show that the defendant companies have a sewer system running through their respective lands, in which all of them are interested. It may help to give us a better understanding of the case by describing at some length the conditions as they existed prior to and at the time this proceeding was instituted. The Forest Park Company of Baltimore City owned a residence development, consisting of about 42 acres, bounded by Liberty Heights avenue on the

south and by Garrison avenue on the east, all of which was in the city, and being just east of the city's western boundary line. That company has a sewer running near the northerly building line of Liberty Heights avenue, just under the sidewalk, which turns southerly and connects with what was known as the Callaway sewer (being the one now owned by the defendant companies). That connection was made under an agreement between the Park Land Corporation, the West Forest Park Company and the Forest Park Company, dated June 1st, 1909, which is to be found in the record of the case of *Mayor, etc., of Baltimore* v. *Forest Park Co.,* 123 Md. 290. The connection was at or about the intersection of Granada path with the western limits of the city. The record of the case in 123 Md. also shows that on March 25th, 1913, the city filed a petition against the Forest Park Company, the Park Land Corporation, the West Forest Park Company, the Development Aid Corporation and George R. Webb, for the purpose of condemning a connection with the sewer of the Forest Park Company which empties into the Callaway system. The proposed connection with that sewer was in the city, but near its western boundary line. The case reported in 123 Md. was instituted to enjoin the city from connecting its sewer with that of the Park Land Corporation, and the West Forest Park Company, or Development Aid Corporation, on the theory that under the agreement between the Forest Park Company and the others, that company had agreed not to allow any sewer to enter into its sewer excepting to drain its land and that of George R. Webb. The city relied on an agreement between it, the State Roads Commission, the Park Land Corporation and the Development Aid Corporation, entered into September 9, 1913, under which the Mayor and City Council of Baltimore connected its sewer with that then belonging to the Park Land Corporation and the Development Aid Corporation, which then owned the system formerly belonging to the West Forest Park Corporation, and disposed of the drainage

into a stream which ultimately reaches Gwynn's Falls. It was agreed that in payment of said connection those two corporations would accept therefor such sum as may be awarded by the appraisers therein provided for or by a jury in the condemnation proceedings theretofore brought by the city, or such other proceedings as may be properly brought to ascertain in that manner the value of such connection to the city.

The record does not show when the condemnation proceeding referred to in 123 Md. was disposed of, but we understood at the argument that it was dismissed and the one in 126 Md. was begun November 23, 1914. The jurisdiction of the court was not in terms attacked by the answers or otherwise, but the answer of the Park Land Corporation, after referring to the drainage system of itself and the Development Aid Corporation, and that it had been unable to agree with the city for the use of the drain, says: "Wherefore, your defendant, whose system lies entirely in Baltimore County, and to whom the city owes no obligation in the matter of taking care of its drainage, is compelled to treat the city as a stranger who desires to make the use of its property, which said use is more valuable than the city has been heretofore willing to admit"; and in the answer of the Development Aid Corporation it is said: "That all of the property of this defendant lies in Baltimore County, and therefore has no claim upon the city nor city agents to take care of the drainage necessities of its community, and this company was organized for the purpose of so doing," etc. The petition does not allege that the connection is in Baltimore County, but the plat filed with it, upon a close inspection, looks as if the point of connection may be a few feet west of the line, if the plat is correct.

The day the jury was sworn on the former trial the parties entered into the following agreement:

"It is understood and agreed that all errors in pleading are hereby waived, and the defendants afore-

said waive any and all technical questions, such as
the jurisdiction of the court and the right of the
plaintiff to proceed, as in this case done; it being the
intention and purpose of the parties hereto to leave
for determination only the question of the amount of
the compensation, if any, to which the defendants are
entitled by reason of the connection of the drainage
set forth in said petition."

The jury at the first trial fixed the value of the property,
sewer connection and use at $18,000. The city made a mo-
tion for a new trial, but that was overruled, and it then
brought the case to this Court. The present appellants en-
deavored to sustain that judgment, and no suggestion was
made at the argument or in the briefs that the lower Court
or this Court had no jurisdiction. Now for the first time,
after a verdict has been rendered fixing the value at $5,847,
the question of jurisdiction is urged. Of course, there can
be no doubt about the general doctrine that jurisdiction of
the subject-matter can not be conferred by consent. Nor
will we question the contention of the appellants that the
jurisdiction conferred on the Circuit Courts of the counties
and the law courts of Baltimore City, by Article 33A of the
Code is a special and limited one, and entirely distinct from
and independent of their common law powers. *Hyattsville
v. W. W. & G. R. R. Co.*, 124 Md. 577. We will, moreover,
concede that a petition for condemnation should be filed in
the county, or the City of Baltimore, where the property
sought to be condemned is situated.

But notwithstanding all these matters, there are other con-
siderations which can not be ignored. By the Act of 1904,
Chapter 349, section 3, the Mayor and City Council of Balti-
more were authorized to acquire for its sewerage system by
gift, purchase, lease or other like methods of acquisition, or
by condemnation, any land or property situated wholly or
partly within the city, or within any of the counties of the
State, or any interest, franchise, easement, right or privilege

therein which may be required, etc.   The general rule is that
when a single tract of land which is sought to be condemned
is located in two counties, the condemnation proceeding may
be in either; 10 *R. C. L.* 206, section 176; 15 *Cyc.* 834.   In
the note to the latter, on page 835, cases are cited to the effect
that condemnation may be had in any one county for a tele-
graph line along the right of way of a railroad company
which extends through several counties.   In *Whitney* v. *Cen-
tral Georgia Power Co.,* 134 Ga. 213, as reported in 19 Am.
& Eng. An. Cases, 982, there is a note citing many authori-
ties.   Some of them are governed by statutes, but in the
absence of a statute we are of the opinion that if the con-
nection purposed to be condemned by this proceeding was
in Baltimore City there could be no question about the right
to condemn there.   Such a rule seems to us to be peculiarly
applicable to sewer connections.   There was an existing
sewer owned by the defendant corporations with which the
city desired to connect its sewer at or about the western
limits of the city.   It is true that the land over which the
sewer runs seems to be owned in part by one corporation
and the rest by another, but all three defendants are inter-
ested in what is spoken of as the Callaway system of sewers,
which extends from a point at or about the city's western
line on Liberty Heights avenue southerly into Baltimore
County.   The connection with the sewer was in fact actually
made under the agreement of September 9th, 1913, before
this proceeding was begun, although the parties had not
agreed upon the compensation.   By their agreement of No-
vember 30, 1914, they waived all errors in pleading, and
declared it to be their intention and purpose to reserve only
the question of the amount of compensation, as will be seen
by the agreement, which is set out in full above.

It was at least a close question whether the connection was
on the city side or on the county side of the western boun-
dary line of the city.   It may be that the question of juris-
diction in the minds of the attorneys which they undertook

to waive by the agreement just referred to was whether a connection in Baltimore City gave a court of that city jurisdiction, although the line beyond the connection was in fact in Baltimore County; but, however that may be, if the court determined it had jurisdiction because the connection was believed to be in Baltimore City, then whether it was right or wrong in its conclusion can make no difference on this, the second appeal. It had the right to decide that question, and as has often been said, it is not whether a court rightly decided a question, but whether it had the right to decide the question at issue. *Stanley* v. *Safe Deposit Co.,* 87 Md. 450; *New York Min. Co.* v. *Midland Co.,* 99 Md. 512.

In *Stanley* v. *Safe Deposit Co.,* this Court said, it is undoubtedly true that the Orphans' Courts are tribunals of special, limited jurisdiction, but as they have the right to admit wills to probate, when the will in question "was presented to the Orphans' Court of that county for probate, *that* court was required to decide and determine whether it had jurisdiction to admit the will to probate, and therefore, at the threshold, had power to decide and determine whether Mr. Cox had been, in fact, at the time of his death, a resident of the county. This was an inquiry which it was necessary for the Orphans' Court to make and to decide before it could proceed either to admit the will to probate or to grant letters of administration * * * If it had a right to decide the question of residence, then it had the right to determine whether it had jurisdiction to admit the will to probate, and if it decided that preliminary question erroneously its decision was subject to review on appeal or to reversal by the Court itself upon proper application made to it for that purpose in due season."

As we have indicated, the jurisdiction of the lower court need only have depended upon the question of fact as to where the connection was, and when this Court reversed the judgment and remanded the case for a new trial, the conclusive presumption is that it determined it had jurisdiction, and

that was necessarily implied, although not expressed in the opinion. If the present appellants had reason to believe it overlooked that question, they should seasonably have brought it to the attention of the court by a motion for reargument or other proper way, and not have waited until the second trial below was over, and then seek to raise it. In *Carrington* v. *Basshor,* 119 Md. 378, we said on page 381: "In *Smith* v. *Shaffer,* 50 Md. 132, it was said a party can not be allowed to prosecute different and successive appeals on the same state of record, unless there have been new proceedings since the last appeal, and then only in respect to questions raised on and by such new proceedings. When appeal is taken, all the questions which may be properly raised in this Court on the then state of the record as it may exist in the court of original jurisdiction must be considered as embraced by the first appeal, and if not then raised and presented for decision they must be considered as waived, otherwise there would be no end of litigation and appeals. *Graff* v. *Barnum,* 33 Md. 283; *Stonebreaker* v. *Stonebreaker,* 34 Md. 444; *Waters* v. *Waters,* 28 Md. 11; *Abraham* v. *Trust Co.,* 86 Md. 254; *Hastings* v. *Foxworthy,* 34 L. R. A. 321. While the question of interest was raised on the former appeal, it was not discussed in the opinion and no mention thereof appears in the decree. It does not, however, necessarily follow it was not considered by the Court in the conclusion and ultimate determination of the case. *This Court is presumed in every case to have considered all questions properly presented by the record, and raised on the appeal, which are found necessary for the determination of the rights of the parties to the suit."*

While our own authorities are sufficient, some outside of this State very clearly announce the law. In the note to *Hastings* v. *Foxworthy,* reported in 34 L. R. A. 321, under sub-head "h. As to matters of jurisdiction," on page 334, a number of authorities are cited, some of which we will refer to. The author of that note begins by saying: "The failure

to raise the question of jurisdiction on or before the prior appeal will prevent a party from raising that question on a subsequent appeal. Although there is an Illinois case to the contrary, it has been in effect overruled." In *Noonan* v. *Bradley,* 12 Wall. (79 U. S.) 121, it is said: "Where the merits of a case are decided in the Circuit Court and the decree, on appeal, is reversed in this Court, and the mandate of the Court is sent down, directing the Court below to execute the decree, it is well settled law that it is too late to call in question the jurisdiction of the subordinate Court. *Skillern* v. *May,* 6 Cranch, 267."

In *Whyte* v. *Gibbes,* 20 How. (61 U. S.) 541, it is said, quoting from the syllabus, that "the objection that the Court had not jurisdiction in the original suit comes too late after the mandate has gone down to the Court below." In *Clary* v. *Hoagland,* 6 Cal. 685, it was contended that the rule that when a case has been once taken to an appellate Court and its judgment obtained on points of law involved, such judgment, however erroneous, becomes the law of the case, applies only to questions of law arising in the case, and does not extend to questions of jurisdiction. The Court said: "The answer as we conceive is this; the first point decided by any Court, although it may not be in terms, is that the Court has jurisdiction, otherwise it would not proceed to determine the rights of the parties. For the purposes of the first trial in this Court, the jurisdiction was as much determined as though the point had been made and passed upon; certain it is, that unless made, it can not now be questioned. (*Washington Bridge Co.* v. *Stewart,* 3 How. 413.)" In *Champaign County* v. *Reed,* 106 Ill. 389, it was held, quoting from the syllabus for convenience: "Where a party appealed from an order of the County Board in refusing to refund to him taxes paid on land not subject to taxation, and judgment was rendered in his favor by the Circuit Court, and that judgment, on appeal by the county, was reversed for error and the cause remanded, whereupon a second recovery is had against the county; *Held,* that on a second appeal this Court would not

listen to the objection that the ·Circuit ·Court had no juris-
·diction of the subject matter." See also *Renick* v. *Luding-
ton,* 20 W. Va. 537-540.

We might consider other phases of the question of juris-
·diction, such as when there can be a waiver, estoppel, &c.,
but we do not think it necessary to further prolong this· opin-
ion by doing so. It is better that it be understood that after
.a· case has gone through the lower Court `as this did, then
was passed on, reversed and remanded for a new trial by us,
.and after the second trial an effort is made upon appeal to
have us hold that the entire proceeding was null and void
·for want of jurisdiction in the ·Court, we must decline to do
·so. The constitutional provision in reference to this Court,
that "the judgment of the Court shall be final and conclu-
·sive" would be of little avail, if its first judgment and man-
·date could be rendered invalid and useless on a second ap-
peal by showing that the lower Court was in the beginning
.a few feet short of its jurisdiction, which is the most that
·could be done in this case. Yet that is what according to our
understanding of the law it ·would amount to. There is no
·material difference, as reflecting upon this question, between
what was in the record before and now. Certain it is that
it could not well be even argued that it is shown that the
·connection with the sewer is in Baltimore County, unless
what appears in the former record is relied on. We are
therefore of the opinion that the motions were properly over-
·ruled, in so far as they are founded on the alleged want of
jurisdiction.

We find no reversible error in having an inquisition in-
·stead of a verdict. The form of this inquisition is the same
as that so earnestly relied on when the case was previously
before us. While it is true that the statute contemplated
having the jury pass on the right to condemn, there can be
·no reason why that could not be waived, when the condemn-
ing party does have such right, and by the agreement in this
case the parties only left for determination the amount of
·compensation. It would unnecessarily greatly prolong such

proceedings if the parties could not enter into agreements
waiving irregularities and other matters not necessarily juris-
dictional. With such an agreement as existed between these
parties, it would serve no good purpose to discuss the differ-
ence between an inquisition and a verdict. Apparently what
was done was what all parties agreed should be done, and
if there was any question about the right to have an inquisi-
tion, the time to raise that was before the jury retired, or at
least before the inquisition was returned. What was being
condemned in this case materially differed from what is usu-
ally condemned in such proceedings, and it could not well be
described in the precise language of the statute.

We find no errors in the first, second and third exceptions.
As said in the prior opinion: "It may fairly be questioned
whether any question of valuation is more difficult of proper
and just solution than the one presented in this case." While
it is true that the cost of the trunk line alone is not the test
of value, yet it is some evidence of it. It would not have
been right to withhold from the jury evidence as to the kind
of sewer it is. It might be a very expensive one, or it might
be a very inferior one, but whatever it is the jury had the
right to know. The cost of reproduction was some evidence
to guide it in awarding compensation. A sewer will not last
indefinitely, and as the city proposed to acquire the right
to add a flow of about 59 cubic feet per second to this sewer,
and the owners of it are to keep it up, they ought not to
complain of the city furnishing evidence of what it would
cost to reproduce it.

In the fourth bill of exceptions the city was permitted to
ask Mr. Bernard the following question: "Will you tell the
Court and jury what is your opinion as a man familiar with
these things and as an expert on the subject, what is the
fair value of the connection and use which the city seeks in
this case to make of the condemned Callaway sewer?" There
was error in permitting that question to be answered. While
judging from our records in this Court Mr. Bernard was one
of the most intelligent and capable men in the city in plac-

ing values on real estate, and had large experience in his line, he did not show sufficient knowledge of the construction, &c., of such sewers as this to qualify him to speak as an expert on the subject. In 126 Md. we permitted a question quite similar in most respects to be propounded to Mr. Whitman, but we said: "As an expert upon a subject, knowledge of which was peculiarly within the province of an engineer such as Mr. Whitman was, it was competent for him to express an opinion, the value of which could be tested upon cross-examination." But we held in reference to permitting Messrs. Sucro and Sutton to give evidence as to the value of the right to enter the Callaway sewer, that although they were civil engineers by profession, had had exhibited to them some contracts under which individuals or corporations had been given the right to enter the sewer, &c., neither of them showed himself possessed of that technical knowledge which would have entitled him to testify to value, other than that possessed by any civil engineer. JUDGE STOCKBRIDGE said: "Any witness to be regarded as an expert should be shown to possess more than a general knowledge of the matters involved." Mr. Bernard was not an engineer, and before admitting such evidence at all the Court should be very careful to see that the witness is thoroughly qualified. At best it comes near encroaching upon the province of the jury, and is, to say the least, dangerous. This Court has placed itself with those which decline to permit an expert to testify to the amount or extent of damages in dollars and cents, although he can state the value of the property injured both before and after the injury. JUDGE FOWLER said in *Belt R. Co.* v. *Sattler,* 100 Md., on page 334, "to allow the expert to give such testimony not only puts him in the place of the jury, but permits him to indulge in mere speculation." JUDGE BURKE said in a case between those parties in 102 Md. 602: "An expert witness, testifying merely as an expert, is not permitted to testify either as to the fact or the amount of damages resulting from an injurious act," etc. So in this case where the testimony offered is to the value of

a connection with a sewer, we get on dangerous ground if we permit witnesses to say what that is worth. Jurors are supposed to take everything into consideration which can legally and properly enter into the question of value, but experts will sometimes unconsciously magnify or minimize, as the case may be, values, being affected by the standpoint from which they view the situation, and do not always take into consideration some elements which should properly enter into their estimates. The evidence in the fifth and sixth exceptions we think should also have been excluded. We find no error in the seventh. The motion was to strike out all of Mr. Bernard's testimony. That was too broad. We find no error in the eighth. The evidence included in the motion in the ninth seems to have come in without objection, and the motion was too late.

The city's twelfth prayer, which is the only one excepted to, ought not to have been granted. It is true that the city will not acquire by these proceedings any right to increase the flow of water on the lands of persons not parties, but if it adds to the ordinary flow such quantities as will cause the lands of those below the sewer to suffer, by reason of the water being collected and emptied on those lands, through the sewer, how can they tell whether the city or the defendants caused the trouble? It is more probable that they would sue the owners of the sewer than the city, and hence the prayer might, to say the least, have been misleading. It may be possible that no damage will ensue unless by reason of the city's connection, yet as the defendants will maintain and be in charge of the sewer, those injured by it would likely treat them as the authors of their trouble. Although we regret that we must reverse the judgment and have another trial, we must do so for the reasons pointed out.

> *Judgment reversed, cause remanded and new trial awarded, the appellee to pay the costs.*